**Larry Dean PEARL and Denise Pearl, both minors, by Frances LaVerne Pearl, their mother and next friend, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 5250.**

United States Court of Appeals Tenth Circuit.

Feb. 8, 1956.

**244**

Schwoerke & Schwoerke, Claude E. Love and James E. Grigsby, Oklahoma City, Okl., for appellants.

B. Jenkins Middleton, Atty., Dept. of Justice (Warren E. Burger, Asst. Atty. Gen., Paul W. Cress, U. S. Atty., Oklahoma City, Okl., and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN, Circuit Judge, and MELLOTT, District Judge.

MELLOTT, District Judge.

In a complaint filed on behalf of minor children, recovery of damages for the death of their father was sought under the Tort Claims Act.[1] Motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted was sustained and this appeal followed.

The complaint alleges that the father, on July 27, 1954, was riding as a passenger on an official indoctrination flight of the Civil Air Patrol in a Civil Air Patrol Piper 14J aircraft, on loan from the Air Force, piloted by "a member of the Civil Air Patrol, and a licensed pilot, and an employee of the government as defined by 28 U.S.C. § 2671" when the plane stalled at an altitude of 200 feet and crashed, killing both the pilot and the children's father. The questions raised in the court below and here are: (1) whether the Civil Air Patrol is a "federal agency"; and (2) whether the pilot of the aircraft was "an employee of the government" within the purview of the statute when the incident giving rise to this suit occurred. Those terms are defined in 28 U.S.C. § 2671.[2]

The Civil Air Patrol was created by the act of July 1, 1946[3] and declared to be a body corporate, with perpetual succession and the powers enumerated in

---

Co. v. Prescott, supra [240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836]; cf. The America, D.C., 174 F. 724."

1. Title 28 U.S.C. §§ 1346(b) and 2671 et seq.

2. "As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

"'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States

but does not include any contractor with the United States.

"'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. * * * June 25, 1948, c. 646, 62 Stat. 982, amended May 24, 1949, c. 139, § 124, 63 Stat. 106."

3. 60 Stat. 346, c. 527, Title 36 U.S.C.A. §§ 201–208.

█ **245**

Section 5,[4] including the power to sue and be sued, to acquire and hold property, to accept gifts, legacies and devises, and to do all acts and things necessary and proper to carry into effect the objects and purposes of the corporation. Its objects and purposes are set out below.[5]

It is clear the primary purpose of the organization was to encourage private citizens in the voluntary contribution of their efforts and services for the public welfare. This, it was contemplated, included development of aviation and maintenance of air supremacy through the education and training of its senior and cadet members, the fostering of civil aviation in local communities and the ultimate providing of an organization of private citizens with adequate facilities to assist in meeting local and national emergencies. The corporation had "no power to issue capital stock or engage in business for pecuniary profits or gain, its objects and purposes being solely of a benevolent character and not for the pecuniary profit or gain of its members." [6] These provisions indicate, if they do not compel the conclusion, that the Civil Air Patrol was chartered as an independent, non-governmental entity.

█ But there are other circumstances tending to support such conclusion. That the Civil Air Patrol is not a wholly owned government corporation of the type listed in the act of December 6, 1945, c. 557, 59 Stat. 597 [7] and the amendments thereto, whose financial transactions and operations are kept under annual scrutiny by the Congress, is beyond cavil.[8] Nor is it a "mixed-ownership government corporation" whose financial transactions are required to be audited annually by the General Accounting Office, a typical example of which is the Federal Deposit Insurance Corporation.[9] The control of the Congress over this corporation is only such as is common to virtually all private corporations granted federal charters—merely requiring the transmittal to Congress each year of a report of its proceedings and activities for the preceding calendar year. The fact that it was listed in the codification [10] with the American National Red Cross, Daughters of the American Revolution and more than twenty such organizations is probably nugatory; but however that may be, the conclusion is inescapable that the Civil Air Patrol under its charter, should not be classified as a corporation "primarily acting as [an] instrumentality of the United States." Since it is not a part of the executive department nor an "independent establishment of the United States" it is not a federal agency.

█ Whether the pilot, under the facts pleaded, was an employee of the government simply because he, as "a member of the Civil Air Patrol, and a licensed pilot * * * was piloting a

4. Title 36 U.S.C.A. § 205.

5. Title 36 U.S.C.A. § 202—"(a) To provide an organization to encourage and aid American citizens in the contribution of their efforts, services, and resources in the development of aviation and in the maintenance of air supremacy, and to encourage and develop by example the voluntary contribution of private citizens to the public welfare;
   "(b) To provide aviation education and training especially to its senior and cadet members; to encourage and foster civil aviation in local communities and to provide an organization of private citizens with adequate facilities to assist in meeting local and national emergencies. July 1, 1946, c. 527, § 2, 60 Stat. 346."

6. Title 36 U.S.C.A. § 204(a).

7. Title 31 U.S.C.A. § 841 et seq.

8. A complete list of such corporations (Commodity Credit Corporation; Federal Housing Administration, to mention some typical ones) is shown in 31 U.S. C.A. § 846 as last amended by the act of May 13, 1954, c. 201, § 6, 68 Stat. 95.

9. Title 31 U.S.C.A. § 856 et seq., Act of Dec. 6, 1945, c. 557, Title II, 59 Stat. 600.

10. Title 36 U.S.C.A., Patrotic Societies and Observances.

Piper 14J aircraft, on loan from the Air Force"[11] is the remaining question. In a case recently decided by the District Court of the United States for the Middle District of North Carolina[12] it was held that an officer of the United States Air Force, assigned to a local wing of the Civil Air Patrol as a liaison officer, in which capacity he was flying an aircraft which had been assigned to the Civil Air Patrol, was acting in the line of duty and within the scope of his employment as an officer of the United States Air Force. Upon a showing that the crash occurred as a result of his negligence, recovery under the Tort Claims Act was allowed. In the cited case, the action was dismissed against the Civil Air Patrol because the evidence had established that the plane was owned, maintained, operated and exclusively controlled by the Army Air Force. The present question was not before that court nor was it decided.

Counsel for appellants rely heavily upon legislation, enacted subsequent to the issuance of the charter to the Civil Air Patrol, which established it as a "volunteer civilian auxiliary" of the Air Force, authorized the Secretary to render assistance to it and authorized him to accept and utilize its services in fulfillment of the objectives set out in Section 2 of the charter. The statutory provisions, as they were at the time of the crash, were enacted in 1954.[13] It would serve no useful purpose to outline extensively the legislation enacted prior to 1954. Stated generally, the provisions for the disposition of property "surplus" to the needs of the Air Force, had been so phrased and interpreted that all government agencies had the right of refusal before it became available to the Civil Air Patrol. The necessity for, and the import of, the act of 1954 is suggested in the explanation contained in the Report of the Senate Committee on Armed Services, which accompanied the bill enacted into law.[14]

11. The quotation is from the complaint.

12. Alexander v. Civil Air Patrol, D.C., 134 F.Supp. 691.

13. "§ 626(l). Civil Air Patrol-Establishment as auxiliary

"The Civil Air Patrol is established as a volunteer civilian auxiliary of the Air Force. To assist the Civil Air Patrol in the fulfillment of its objectives as set out in section 202 of Title 36, the Secretary of the Air Force is authorized, under such regulations as he may prescribe with the approval of the Secretary of Defense—

"(1) to furnish to the Civil Air Patrol from available stocks which are excess to the requirements of the Departments of the Army, Navy, and Air Force, without regard to the Federal Property and Administrative Services Act of 1949, as amended, by gift, loan, or sale (A) major items of equipment, including aircraft, motor vehicles, and communication equipment, and (B) necessary related supplies, materials, training aids, and other equipment;

"(2) to permit utilization of such services and facilities of the Air Force as in the opinion of the Secretary of the Air Force are required by the Civil Air Patrol to carry out its assigned mission;

"(3) to furnish to the Civil Air Patrol such quantities of fuel and lubricants as may be required by it for the purpose of carrying out those missions assigned by the Air Force;

"(4) to establish, maintain, supply and equip liaison offices of the Air Force at the National, State, Territorial, and not more than eight regional, headquarters of the Civil Air Patrol, and to detail and assign military and civilian personnel of the Air Force to such offices;

"(5) to detail military and civilian personnel of the Air Force to units and installations of the Civil Air Patrol to assist in the training program of the Civil Air Patrol; and

"(6) to authorize, in time of war or national emergency hereafter declared by the Congress or the President, payment of travel expenses and allowances, in accordance with the Travel Expense Act of 1949, for members of the Civil Air Patrol while engaged in carrying out any mission specifically assigned by the Air Force. As amended Oct. 31, 1951, c. 654, § 2(5), 65 Stat. 706; May 27, 1954, c. 225, 68 Stat. 141; July 16, 1954, c. 531, § 1, 68 Stat. 485." 5 U.S.C.A. § 626(l).

14. Senate Report 1278, 83rd Cong. 2nd Sess., U. S. Code Cong. & Adm. News 1954, p. 2271. "Under Public Law 557,

In the present case, it should be emphasized, there is no claim that the pilot had been detailed by the Air Force to assist in the training program of the Civil Air Patrol, making subdivision 5 of the new act applicable, nor is it contended that the members of the Civil Air Patrol, including the pilot and the deceased, were engaged, in time of war or national emergency, in carrying out a mission specifically assigned by the Air Force, under subdivision 6 of the act. The principles established by the decisions pertaining to the negligent operation of vehicles or property belonging to the United States while in the custody of others than its employees, especially those who, although members of the National Guard, had not been ordered into the active service of the United States, are therefore applicable.[15] The order dismissing the suit was correct.

Affirmed.

the Air Force could make available to the Civil Air Patrol surplus aircraft materiel and equipment. Under this arrangement Civil Air Patrol obtained surplus equipment directly from the Air Force. With the passage of the Federal Property and Administrative Services Act of 1949, however, surplus property was defined to mean property excess to the needs of all Federal agencies, with the result that Civil Air Patrol came after all Federal agencies in acquiring Air Force surplus property. Section 1 of the bill would permit the Civil Air Patrol to acquire equipment excess to the needs of the Army, Navy, and Air Force without regard to the Federal Property and Administrative Services Act of 1949."

15. Williams v. United States, 10 Cir., 189 F.2d 607 and cases cited. Cf. King v. United States, 5 Cir., 178 F.2d 320, cer-

tiorari denied 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373; United States v. Holly,

10 Cir., 192 F.2d 221; and O'Toole v. United States, 3 Cir., 206 F.2d 912.