Sally WILLIAMSON, individually and as Personal Representative of the Estate of Walter E. Williamson, Tim Williamson, Mike Williamson, David Williamson and Tracy Yurek, Plaintiffs,

v.

Lyle SARTAIN and the Montana Civil Air Patrol, a United States corporation, Defendants.

No. CV–81–130–GF.

United States District Court, D. Montana, Great Falls Division.

Oct. 6, 1982.

**488**

Robert F. James, James, Gray & McCafferty, Great Falls, Mont., James R. Safley, Harding A. Orren, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Phillip J. Kolczynski, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HATFIELD, District Judge.

## I. FACTUAL BACKGROUND

The present action arises out of an airplane crash which occurred on September 14, 1980 and claimed the life of Walter F. Williamson, a member of the Montana Wing of the Civil Air Patrol. The crash occurred while Mr. Williamson was performing a United States Air Force authorized mission in his capacity as a volunteer member of the Civil Air Patrol (hereinafter the "CAP"). Plaintiffs claim that the negligence of the CAP and defendant Lyle Sartain, commanding officer of the Montana Wing of the CAP, was the proximate cause of the fatal crash.

The plaintiffs do not dispute that Mr. Williamson was engaged in the performance of a United States Air Force authorized mission at the time of his death. Furthermore, plaintiff Mrs. Sally Williamson has qualified for and is receiving benefits under the Federal Employees Compensation Act (hereinafter the "F.E.C.A."), 5 U.S.C. §§ 8101, *et seq.*

The plaintiffs originally filed this action as a wrongful death action in the District Court of the State of Montana, Cascade County. Upon petition of the United States of America, acting on behalf of the defendants, CAP and Lyle Sartain, the action was removed to this court pursuant to 28 U.S.C. §§ 1441–1445.

Subsequent to removal of the action, the United States filed a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, upon the ground that plaintiffs had failed to state a claim upon which relief could be granted. Thereafter, the plaintiffs sought leave to amend their complaint in order to name the United States as a party defendant, and hold that entity liable under the Federal Tort Claims Act (hereinafter the "F.T.C.A."), 28 U.S.C. §§ 2671, *et seq.,* to which the United States has objected.

The foregoing motions having been fully briefed and argued before the court are now ripe for disposition.

## II. MOTION TO AMEND

The original complaint herein named the CAP and Lyle Sartain, commanding officer

of the Montana Wing of the CAP, as defendants. The CAP and its individual members, however, have been declared to be instrumentalities of the United States pursuant to federal statute, *i.e.,* 10 U.S.C. § 9441(c).[1] As such, suit against the CAP or any of its members, *eo nomine,* for injury or death resulting from any acts or omissions committed while performing an United States Air Force authorized mission is barred by 28 U.S.C. § 2679, the exclusivity provision of the F.T.C.A.[2]

Upon the United States' filing of the motion to dismiss presently before the court, the plaintiffs sought to amend their complaint to include the United States as party defendant, thereby seeking recovery under the F.T.C.A. The United States' motion to dismiss was predicated on the assertion that the declaration of Congress, encompassed in 10 U.S.C. § 9441(c), abolished all common law causes of action against the CAP and Lyle Sartain which may have arisen out of the death in question. The sole remedy available to the plaintiffs, the United States contends, is founded in the F.T.C.A.

The amendment sought by the plaintiffs changes the posture of the United States' motion to dismiss. The plaintiffs argue that even if the CAP and its members are adjudged to be instrumentalities of the United States, the court should nevertheless rule that the F.T.C.A. is inapplicable to the present case, thus preserving the plaintiffs' common law cause of action for wrongful death against the CAP and Lyle Sartain.

The United States counters by asserting that the F.T.C.A. is applicable. That determination is of paramount importance, since the United States further contends that the plaintiffs' action under the F.T.C.A. is barred by the exclusivity provision of the F.E.C.A.,[3] under which compensation for the death of Mr. Williamson has been allowed.

It is the opinion of the court that it is immaterial whether or not the plaintiffs' motion to amend is granted. That conclusion is based on the fact that the rationale espoused in disposition of the defendants' motion to dismiss is dispositive of this entire controversy. That rationale evinces the fact that this court lacks jurisdiction to entertain the present action even if the United States were a party defendant. Therefore, it necessarily follows that the plaintiffs' motion to amend the complaint must be denied.

### III. MOTION TO DISMISS

The defendants seek dismissal of the present action upon the ground that the plaintiffs have failed to state a claim upon which relief can be granted. The defendants' motion is predicated on the assertion that the plaintiffs' exclusive remedy for the alleged wrongful death of the decedent lies in recovery under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, *et seq.*

The plaintiffs counter by asserting that they are entitled to pursue recovery against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.,* or in the alternative pursue a common law action for wrongful death against the defendant CAP and Lyle Sartain.

The issues presented for determination are: (1) whether a member of the CAP, entitled to benefits under the F.E.C.A., is precluded from pursuing a claim for recovery under the F.T.C.A. against the United States, and (2) whether a member of the

---

1. 10 U.S.C. § 9441(c):

    The Secretary may use the services of the Civil Air Patrol in fulfilling the noncombat mission of the Department of the Air Force, and for purposes of determining the civil liability of the Civil Air Patrol (or any member thereof) with respect to any act or omission committed by the Civil Air Patrol (or any member thereof) in fulfilling such mission, the Civil Air Patrol shall be deemed to be an instrumentality of the United States.

2. 28 U.S.C. § 2679(a) provides:

    (a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title [28 USCS § 1346(b)], and the remedies provided by this title in such cases shall be exclusive.

3. *See* n. 4, *infra.*

CAP, who is barred from pursuing a cause of action under the F.T.C.A. against the United States, may nonetheless pursue a common law wrongful death action against the CAP or its members.

Resolution of the issues so delineated requires the court to undertake a three step analysis. First, it must be determined whether, and under what circumstances, the United States is liable under the F.T.C.A. for the negligent acts or omissions of the CAP and its members. If such liability does in fact exist, the court must then determine whether a member of the CAP can maintain an action under the F.T.C.A. against the United States. Finally, assuming that an injured CAP member cannot seek recovery under the F.T.C.A., it must be determined whether that member may, nonetheless, maintain a common law action against the CAP or any of its members.

### A. The CAP and the F.T.C.A.

■ The CAP was created by act of Congress as a federally chartered corporation. 36 U.S.C. §§ 201–208. In 1947, the CAP became an official auxiliary of the United States Air Force pursuant to the congressional enactment of 10 U.S.C. § 9441(c).

Prior to 1980, the CAP was held not to be a federal agency, nor its members federal employees, for purposes of the F.T.C.A. See, United States v. Alexander, 234 F.2d 861 (4th Cir.1953), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956); Pearl v. United States, 230 F.2d 243 (10th Cir.1956). In 1980, however, Congress amended 10 U.S.C. § 9441(c) to expressly provide that for purposes of determining civil liability, the CAP and its members were to be considered instrumentalities of the United States while fulfilling non-combat missions for the Department of the Air Force.

Where there exists some question as to whether a particular agency is a federal agency within the purview of the F.T.C.A., there necessarily exists a question as to the status of its employees. Neither question exists, however, with respect to the CAP or its members.

■ Once it is determined that a particular agency is not a "federal agency" within the meaning of the F.T.C.A., it necessarily follows that the employees of that agency are not employees of the United States for purposes of the F.T.C.A. See, e.g., Close v. United States, 397 F.2d 686, 687 (D.C.Cir. 1968). Whereas this rationale would have been applicable to the CAP and its members prior to the enactment of the 1980 amendment to 10 U.S.C. § 9441(c), the express declaration of Congress that the CAP and its members are to be considered instrumentalities of the United States in the delineated situation clearly precludes any contention that the CAP members are not "federal employees". Such express congressional declarations are designed to remove doubt as to the status of certain persons where such doubt may otherwise exist because of the uniqueness of a particular agency. See, e.g., 29 U.S.C. § 926(a)(3) (enrollees of Job Corps); 42 U.S.C. § 2994b (volunteers under the Economic Opportunity Act); 16 U.S.C. § 558c (volunteers in the National Forests Program); 42 U.S.C. § 5055(b) (volunteers of ACTION).

In the present situation, however, the court does not have to deduce that CAP members are "federal employees" for purposes of the F.T.C.A., since Congress has specifically declared every member of the CAP to be an instrumentality of the United States when performing an Air Force authorized mission.

### B. Recovery by CAP Members under the F.T.C.A.

■ Having determined that the United States is liable under the F.T.C.A. for the negligent acts or omissions of the CAP or its members, committed while the CAP or its members are engaged in a United States Air Force authorized mission, the court must now assess whether a member of the CAP may pursue a claim against the United States under the F.T.C.A.

■ The court begins its analysis cognizant of the fact that the F.T.C.A. contains no provisions barring a claim under that act by a federal employee who sustains a loss or

injury as a result of the negligent conduct of the United States or its agents. Although mere employment by the United States does not preclude recovery under the F.T.C.A. by a federal employee, there are other provisions of federal law which may serve to render the claims of a federal employee non-actionable under the F.T.C.A.[4] The most common bar to a federal employee's seeking recovery under the F.T.C.A. is founded in the comprehensive compensation system for federal employees established by the Federal Employees Compensation Act. 5 U.S.C. §§ 8101 et seq. The compensation remedy provided by the F.E.C.A. has been expressly declared by Congress to be exclusive of all other liability of the Government for the death or injury of any federal employee subject to its coverage.[5] Restated, any employee of the government sustaining injury while acting in the performance of his duties is barred from recourse under the F.T.C.A. against the Government, if the injury sustained is compensable under the F.E.C.A. No election of remedies is available. See, United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). It is irrelevant that the potential damages under the F.T.C.A. would greatly exceed the F.E.C.A. benefits, Avasthi v. United States, 608 F.2d 1059 (5th Cir.1979), or that the benefits awarded under the F.E.C.A. were rejected. Gill v. United States, 641 F.2d 195 (5th Cir.1981). In short, if the F.E.C.A. is applicable to an injury sustained by a federal employee, the federal district court lacks jurisdiction over the subject matter of any action seeking recovery under the F.T.C.A. for those injuries. Joyce v. United States, 474 F.2d 215 (3rd Cir.1973). It is precisely this point which the Government asserts mandates dismissal of the present action.

Volunteer civilian members of the CAP (except CAP cadets) are covered by the F.E.C.A. 5 U.S.C. §§ 8141(a)(c) and 8150(b). The Government submits that it necessarily follows from the unambiguous language of the exclusivity provision of the F.E.C.A. that if a claim for injury or death of a CAP member is compensable under the F.E.C.A., no recovery may be had under the F.T.C.A.

The plaintiffs do not dispute the general proposition that if a claim for injury or death of a federal employee, as defined in the F.E.C.A., is compensable under the F.E.C.A., no recovery may be had under the F.T.C.A. Rather, the gist of the plaintiffs' argument is that Mr. Williamson was not an "employee" as defined in the F.E.C.A., specifically 5 U.S.C. § 8101, and therefore the exclusivity provision is inapplicable to the present claim. The reception of F.E.C.A. benefits itself, plaintiffs argue, is not determinative but the applicability of the exclusivity provision hinges on whether or not Mr. Williamson may properly be classified as an "employee" under the precise definition of 5 U.S.C. § 8101(1). The plaintiffs contend that Mr. Williamson did not fall within the purview of that definition.

Subsection (B) of 5 U.S.C. § 8101(1) defines an employee for purposes of F.E.C.A. as:

> an individual rendering personal service to the United States similar to the service of a civil officer or employee of the Unit-

---

[4] The principal bars include: (1) the right to compensation under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, et seq., and (2) the Feres doctrine which precludes recovery under the F.T.C.A. by members of the armed services for injuries sustained incident to service. See, Feres v. United States, 340 U.S. 135, 143, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950).

[5] 5 U.S.C. § 8116(c):

The liability of the United States or an instrumentality thereof under this subchapter [5 U.S.C. §§ 8101 et seq.] or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

ed States, without pay or for nominal pay, when a statute authorizes the acceptance or use of the service, or authorizes payment of travel or other expenses of the individual. . . .

The plaintiffs seek to impress upon the court that Mr. Williamson was not an employee as defined by F.E.C.A. because (1) he was not rendering personal service to the United States but was rendering service to the CAP, and (2) he was not performing services similar to the service of a civil officer or employee of the United States.

Although this court would be inclined to agree with the United States that CAP members injured while in the performance of a United States Air Force authorized mission falls within the definition of "employee" as codified in 5 U.S.C. § 8101(1)(B), it need not and cannot make that determination. The authority to make that determination is vested solely with the Secretary of Labor.

The F.E.C.A. provides that the action of· the Secretary of Labor or his designee in awarding or denying compensation payment is "final and conclusive for all purposes and with respect to all questions of law and fact," see, 5 U.S.C. § 8128(b)(1), and is "not subject to review . . . by a court by mandamus or otherwise." *Ibid.* sub. (2). Accordingly, the award is conclusive and not subject to review. *Soderman v. United States Civil Service Commission,* 313 F.2d 694, 695 and cases there cited (9th Cir.1962), *cert. denied,* 372 U.S. 968, 83 S.Ct. 1089, 10 L.Ed.2d 131 (1963); *Gill v. United States,* 641 F.2d 195 (5th Cir.1981).

5 U.S.C. § 8141(a) provides coverage under the F.E.C.A. for volunteer civilian members of the CAP. In the case at bar, the Secretary of Labor, by granting F.E.C.A. benefits for the death of Mr. Williamson, has determined that Mr. Williamson was within the coverage of the F.E.C.A. It follows under § 8116(c), that the compensation so awarded under F.E.C.A. represents the sole remedy available to the plaintiffs. The court is bound by the Secretary's conclusion that Mr. Williamson's death falls within the coverage of F.E.C.A. Therefore,

the plaintiffs are clearly barred from bringing suit against the United States or its instrumentalities under the F.T.C.A. for Mr. Williamson's death. The court finds no basis upon which to conclude that a member of the CAP, entitled to receive F.E.C.A. benefits, is not subject to the "exclusivity" provision of that act. Once the Secretary of Labor determines that there is coverage under the F.E.C.A., the exclusivity provision necessarily applies.

The plaintiffs' argument is simply one founded in equity. Under 5 U.S.C. § 8141, CAP members' benefits are calculated by a statutory presumption that these members earn $300.00 per month, resulting in a minimum monthly benefit of $135.00. This nominal amount, plaintiffs argue, is indicative of Congress' intention not to have the exclusivity provision apply to CAP members. This court does not dispute the fact that these nominal benefits are inadequate to compensate the members of the CAP or their families for the injuries or death which CAP members may sustain. It is indeed regrettable that CAP members such as Mr. Williamson, who honorably and courageously provide their services to the benefit of their fellow men, are not entitled to adequate compensation. Nonetheless, the necessary change in this area must emanate from the legislative branch of government. However inequitable the result may be, this court cannot act as a supra-legislature but must interpret and apply the law as it exists.

C.  *Application of the Exclusivity Provision as a Violation of Due Process*

■ The plaintiffs' final contention in opposition to the United States' motion to dismiss is bottomed on the assertion that the application of the exclusivity provision of the F.E.C.A., 5 U.S.C. § 8116, to their claim violates the due process clause of the Fifth Amendment. The violation, plaintiffs argue, results from the fact that their compensation under the F.E.C.A. is grossly disproportionate to the compensation the F.E.C.A. grants to those persons which Congress intended to be employees under the F.E.

C.A.[6] The court perceives the plaintiffs' argument as tantamount to the contention that the abrogation of the plaintiffs' common law right to sue the CAP or its members is violative of the due process clause of the Fifth Amendment in that (1) there was no new benefit created as a *quid pro quo,* and (2) the minimal benefits allowed under F.E.C.A. creates a classification which denies CAP members equal protection. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The court is unpersuaded.

First with respect to the plaintiffs' right to sue the CAP itself, there is simply no basis upon which to bottom a due process claim.

Before the enactment of the F.T.C.A., many government instrumentalities were suable in tort. Government corporations were normally given the authority to sue and be sued by express declaration of Congress in the formation of those corporations. *See, Keifer and Keifer v. R.F.C.,* 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784 (1939). The CAP was one such corporation upon which Congress conferred the "sue and be sued" authority. 36 U.S.C. § 205(a). With the enactment of the F.T.C.A., however, the authority of such government corporations to sue or be sued was repealed to the extent that any tortious act fell within the purview of the F.T.C.A.[7] By its enactment of 10 U.S.C. § 9441(c), wherein it was declared that the CAP and its members are to be considered instrumentalities of the United States when engaged in the performance of United States' authorized missions, Congress specifically repealed the authority of the CAP to sue and be sued when so engaged.

■ Under the doctrine of sovereign immunity, when the United States waives its immunity it may attach any conditions to its consent. *Glidden Company v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), *cf., Henninger v. United States,* 473 F.2d 814 (9th Cir.1973), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51. Therefore, Congress clearly has the power to take away the right to sue its instrumentalities in tort or require all suits in tort to proceed directly against the United States. This is exactly what Congress intended to do by its enactment of 28 U.S.C. § 2679(a), the exclusiveness of remedy provision of the F.T.C.A.[8] Congress' enactment of 10 U.S.C. § 9441(c) unequivocally brings the CAP within the purview of 28 U.S.C. § 2679(a).

If the court were being presented with a situation in which the right to sue was vested, *i.e.,* the accident occurred prior to the enactment of 10 U.S.C. § 9441(c), there would certainly be due process implications. *See, E.g., Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928); *cf., Kiker v. Estep,* 444 F.Supp. 563 (N.D.Ga.1978). However, where as here, the accident in question occurred after the enactment of 10 U.S.C. § 9441(c), the abrogation of the right to sue

---

**6.** 5 U.S.C. § 8141(b) provides that the monthly pay of a CAP member shall be deemed to be $300.00 for the purpose of computing compensation for disability and death, under the F.E.C.A.

**7.** 28 U.S.C. § 2679(a) expressly provides:

The authority of any federal agency to sue or be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title [28 U.S.C.], and the remedies provided by this title in such cases shall be exclusive.

**8.** The purpose of 28 U.S.C. § 2679(a) was explained in S. Rep. No. 1400, 79th Cong.2d Sess. 33–34 (1946), as follows:

This section provides that after the effective date of the title, the authority of any Federal agency to sue and be sued in its own name will no longer be applicable to torts cognizable under this title. This will place torts of 'suable' agencies of the United States upon precisely the same footing as torts of 'nonsuable' agencies. In both cases, the suits would be against the United States, subject to the limitations and safeguards of the bill; and in both cases the exceptions of the bill would apply either by way of preventing recovery at all or by way of leaving recovery to some other act, as, for example, the Suits in Admiralty Act. It is intended that neither corporate status nor 'sue and be sued' clauses shall, alone, be the basis for suits for money recovery sounding in tort.

a federal instrumentality is not violative of the due process clause.

With respect to whether the abrogation of the plaintiffs' common law right to sue the fellow employee/members of the CAP, occasioned by 28 U.S.C. § 2679(a), is violative of the due process clause, again, it is the conclusion of this court that plaintiffs' contention in that regard must be rejected.

The combined effect of 10 U.S.C. § 9441(c), 28 U.S.C. § 2679(a) and 5 U.S.C. § 8116(c) is an abrogation of a CAP member's common law right of action against a fellow member when the negligence of the latter, committed while engaged in the performance of an Air Force authorized mission, occasions injury or death on the former. The right to sue a co-worker, however, does not enjoy constitutional protection. The premise of the plaintiffs' argument was rejected as unsound by the Supreme Court in *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). There, in sustaining the abolition of a gratuitous passenger's right to sue his host for negligence, the Supreme Court held that:

> The Constitution does not forbid the creation of new rights or the abolition of old ones recognized by the common law. . . .

*Id.* at 122, 50 S.Ct. at 58. The rule espoused in *Silver* is still controlling as to this issue. *See, e.g., Thomason v. Sanchez*, 539 F.2d 955 (3rd Cir.1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *Carr v. United States*, 422 F.2d 1007 (4th Cir.1970). Therefore, the fact that a *quid pro quo* benefit has not been created does not result in the abrogation of the plaintiffs' common law right as being a constitutional deprivation.[9]

Finally, the plaintiffs' contention that the application of the exclusivity provision of the F.E.C.A. to members of the CAP violates the due process clause by denying him equal protection must be rejected as meritless.

Plaintiffs argue that the abrogation of their right to sue the decedent's fellow CAP members represents an unconstitutional classification, in that the compensation they are relegated to receiving under the F.E.C.A. is grossly disproportionate to the compensation F.E.C.A. grants to other persons which are deemed "employees" for purposes of the exclusivity provision. The application of the exclusivity provision to CAP members, plaintiffs argue, is not justified because the compensation received is simply not reasonable.[10]

As previously noted, the right to sue a fellow co-worker does not enjoy constitutional protection. Therefore, the classification complained of does not penalize the exercise of any constitutional right. As such, the statutory classification in question comes before this court clothed with a presumption of constitutionality and it "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *cf., Thomason v. Sanchez*, 539 F.2d 955 (3rd Cir.1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *Carr v. United States*, 422 F.2d 1007 (4th Cir.1970).

Application of the foregoing standard to the classification in question leads this court to conclude that the classification is justified. In providing coverage under the F.E.C.A. for members of the CAP, Congress was clearly dealing with a unique situation. CAP members provide service to the United States on a volunteer part-time basis. The $300.00 per month figure, on which compensation under the F.E.C.A. is figured for

---

9. The court reiterates its position that the due process implications which would necessarily be attendant the abrogation of a vested right are not present in the case at bar; the accident having occurred after the enactment of the pertinent statutes.

10. It bears repetition that the plaintiffs' argument in this regard is bottomed on the conten-

tion that Congress' decision to base the compensation to which CAP members are entitled under F.E.C.A. on a $300.00 per month wage figure, 5 U.S.C. § 8141(b), is so unreasonable that the abrogation of the plaintiffs' common law remedy against the fellow CAP members is simply unjustified.

CAP members, is undoubtedly reflective of the part-time nature of CAP members' service to the Government. For that reason, Congress was certainly justified in reaching that minimal figure.

In actuality it is not the effect of the F.E.C.A. which renders an unreasonable result in the present situation. The effect of the F.E.C.A. is that CAP members cannot seek recovery of damages against the United States or its instrumentalities. That result, however, is not unreasonable since it is clearly the prerogative of Congress, in waiving sovereign immunity, to delineate the extent of the sovereign's liability. What the plaintiffs' complaint actually centers on is the reasonableness of Congress' declaration that each individual member of the CAP is to be deemed an instrumentality of the United States while engaged in the performance of an air force authorized mission. *See,* 10 U.S.C. § 9441(c). The effect of that declaration was to make the F.T.C.A. the exclusive remedy available to anyone, not just CAP members, injured by any act or omission of the CAP or its members. The plaintiffs have presented no authority, and indeed none exists, which stands for the proposition that Congress lacks the authority to make that designation.

Although the court is indeed sympathetic with the plaintiffs' position, it is not within the power of this court to remedy the inequity which has occurred. The change necessary to adequately compensate individuals such as the plaintiffs must emanate from Congress.

An appropriate order shall issue.